NANCY CHRISTENSEN vs. CONTRIBUTORY RETIREMENT
APPEAL BOARD & another[1] (and a companion case[2] ).

No. 95-P-1539.

Suffolk. January 15, 1997. - April 29, 1997.

Present: SMITH, GREENBERG, & FLANNERY, JJ.

*Retirement. Pension. School and School Committee,* Compensation of
personnel, Retirement benefits. *Statute,* Construction. *Words,* "Regular
compensation."

A determination of the Contributory Retirement Appeal Board that certain
payments to retired teachers in the last year of their service were sever-
ance payments and not includable in the teachers' regular compensation
for purposes of calculating their retirement benefits was error as matter
of law, where the payments were based exclusively on the teachers'
longevity and were not made contingent on their retirement. [547-548]

CIVIL ACTIONS commenced in the Superior Court Depart-
ment on April 21, 1994, and December 20, 1994, respectively.

After the actions were consolidated, the cases were heard
by *Margaret R. Hinkle,* J.

*Benjamin Robbins,* Assistant Attorney General, for the
defendants.

*Judith Neumann* for the plaintiffs.

SMITH, J. The plaintiffs, Nancy Christensen and Ronald
Schutt, filed actions in the Superior Court seeking review
under G. L. c. 30A, § 14, of decisions of the Contributory
Retirement Appeal Board (CRAB), affirming the Teachers'
Retirement Board's (board) decisions that, for purposes of
calculating their pensions, certain payments received by the
plaintiffs were not "regular compensation" within the mean-
ing of G. L. c. 32, § 1. The two actions were consolidated,
and, after a hearing, a Superior Court judge reversed the de-

[1]Teachers' Retirement Board.
[2]Ronald Schutt vs. Contributory Retirement Appeal Board & another.

cisions of CRAB as to both plaintiffs. CRAB and the board have appealed from the judgments entered pursuant to the Superior Court judge's decision.

We summarize the undisputed facts. The plaintiffs were employed as teachers by the town of Lexington (town) and, as such, were members of a teachers' union, the Lexington Education Association (association). Their employment was subject to a collective bargaining agreement (the agreement) between the Association and the Lexington School Committee (committee). In June, 1990, Schutt gave the committee notice of his intent to retire at the conclusion of the 1991-1992 school year. On or about May 4, 1992, Christensen notified the committee of her intent to retire at the end of the 1991-1992 school year.

Prior to the 1991-1992 school year, teachers who had at least ten years of service in the town's school system received annual longevity payments of $400 to $700,[3] pursuant to Article XXXIV, entitled *Longevity*, of the agreement.[4] In addition to the article authorizing longevity payments, Article XXXIII of the agreement provided a severance benefit for certain unused sick leave to teachers who had at least fifteen years of service, had accumulated at least 150 days of sick leave, and had given a year's advance notice of their intent to retire.

On February 27, 1991, prior to the plaintiffs' retirements, the association and the committee revised Article XXXIV of the agreement by adding an alternative longevity payment option for teachers who had completed fifteen years of service in the town's school system. The new option became available to teachers during the 1991-1992 school year and allowed the individual teacher to choose to receive either (1) the existing $700 annual longevity payment or (2) three consecutive annual longevity payments of $3,000 each. Upon electing to receive the three consecutive $3,000 annual longevity payments, eligibility for the annual $700 longevity payment and Article XXXIII severance payments would cease. Both of the plaintiffs exercised the option to receive the $3,000 annual longevity payments. At the time the plaintiffs retired, they had each received one $3,000 payment.

---

[3]The amount received depended upon the individual teacher's length of service.

[4]Because of their length of service, each plaintiff had been receiving annual payments of $700.

As teachers employed by the town, both were members of the Massachusetts Teachers' Retirement System (MTRS). "The normal yearly amount of the retirement allowance for any member [of the MTRS is computed based on the teacher's age, years of creditable service, and] . . . the average annual rate of *regular compensation* received by such member during any period of three consecutive years of creditable service for which such rate of compensation was the highest, or on the average annual rate of *regular compensation* received by such member during the period or periods, whether consecutive or not, constituting his last three years of creditable service preceding retirement, whichever is the greater . . . ." G. L. c. 32, § 5 (2)(*a*) (1994 ed.) (emphases supplied).

"Regular compensation" is defined by G. L. c. 32, § 1 (1994 ed.), as follows:

> "[T]he salary, wages or other compensation in whatever form, lawfully determined for the individual service of the employee by the employing authority, not including bonus, overtime, severance pay for any and all unused sick leave, early retirement incentives, or any other payments made as a result of giving notice of retirement . . . ."

The parties agreed that severance payments are excluded from the definition of "regular compensation" and that longevity payments are included in the definition of "regular compensation."

After the plaintiffs retired, they were notified by the board that only $700 of the $3,000 they received in longevity payments would be considered "regular compensation" for purposes of calculating their pensions; the rest ($2,300) was considered to be a severance payment. The plaintiffs appealed the board's decisions to CRAB which, in accordance with G. L. c. 32, § 16(4), assigned the appeals to the Division of Administrative Law Appeals (DALA) for hearings. Following the hearings, the board's decisions were affirmed. The plaintiffs appealed the DALA decisions to CRAB which subsequently affirmed the board's decisions.

The plaintiffs then filed actions for judicial review of CRAB's decisions in the Superior Court. The plaintiffs claimed that CRAB's decisions were "(a) [i]n excess of

CRAB's and [the board's] statutory authority and jurisdiction; (b) [b]ased upon an error of law; (c) [u]nsupported by substantial evidence; and (d) [a]rbitrary, capricious and an abuse of discretion."[5]

On June 23, 1995, a Superior Court judge reversed the CRAB decisions and ruled that CRAB erred as matter of law by "characterizing the longevity payments as 'severance payments' and excluding them from 'regular compensation' in determining petitioners' retirement benefits." The judge noted that the revised article "specifically labels the payments . . . 'longevity payments' " and that the payments are based exclusively on longevity and do not carry any "discernible link to an employee's final years of employment."

On appeal, the defendants claim that the judge committed error because the revised article expressly provided that the new longevity option took the place of both longevity payments and severance payments. They also argue that the $3,000 payments were not "regular compensation" because the payments were "unusually large and fixed amounts for a fixed period of time," and were not payments for work or service performed. In support of their arguments the defendants cite *Boston Assn. of Sch. Administrators & Supervisors* v. *Boston Retirement Bd.*, 383 Mass. 336, 341 (1981). We disagree and, because we conclude that CRAB erred as matter of law in its characterization of the payments in issue, we affirm the judgments entered below.

The defendants' reliance on *Boston Assn. of Sch. Administrators & Supervisors* v. *Boston Retirement Bd., supra,* is misplaced. In that case, the court held that payments made pursuant to an early retirement incentive plan were not "regular compensation"; therefore the payments could not be included in the base upon which retirement benefits were

[5]In addition, Schutt claimed, under G. L. c. 30A, § 14, that CRAB's decision was "[m]ade upon unlawful procedure, in that the magistrate [of DALA], sua sponte, excluded relevant and material evidence from the record." Schutt was referring to a list, compiled by the association, which showed the ages of the employees who opted for the $3,000 longevity benefit for the 1991-1992, 1992-1993, and 1993-1994 school years, and whether or not they retired. The list indicated that the majority of the employees who opted for the $3,000 payments had not given notice to retire and had not retired. This same list was part of a stipulation of fact between the plaintiff Christensen and the defendant board.

calculated.[6] In defining "regular compensation," the court ruled that " 'regular,' as it modifies 'compensation,' imports the idea of ordinariness or normality as well as the idea of recurrence. All this contrasts with 'overtime' and with the compendious 'bonus' which are to be excluded from the compensation that figures in computing retirement benefits." *Id.* at 341. Additionally, the court concluded that G. L. c. 32, § 5(2)(*a*), and § 1 together provide "a safeguard against the introduction into the computations of adventitious payments to employees which could place untoward, massive, continuing burdens on the retirement systems." *Ibid.*

Here, there is no link between the payments and the plaintiffs' final years of employment. The record does not support the defendants' argument that $2,300 of the $3,000 payment represented payment of severance benefits pursuant to Article XXXIII of the agreement. Nothing in the record indicates that either plaintiff was even eligible to receive benefits under that article. It is undisputed that Christensen was not eligible to receive such benefits because she failed to give the requisite one-year notice of her intent to retire.

The $3,000 payments are not made contingent upon the termination of employment or retirement. Rather, the payments are based exclusively on longevity and do not inherently operate to augment retirement pay. Indeed, many teachers who received the $3,000 longevity payments in 1991-1992 did not retire.

Finally, there was insufficient evidence to support a finding that the revised article created "untoward, massive, continuing burdens on the retirement systems." *Boston Assn. of Sch. Administrators & Supervisors* v. *Boston Retirement Bd., supra,* especially in light of the fact that a large number of the employees who elected the payment option did not retire.

*Judgments affirmed.*

---

[6]In support of its conclusion, the court noted that, under the early retirement incentive plan, any recipient who failed to retire after receiving payment was required to return the payments with interest. *Boston Assn. of Sch. Administrators & Supervisors* v. *Boston Retirement Bd., supra* at 342 n.6.